15

AUSA Matthew A. Roth, 313-226-9186
Special Agent Wylie R. Christopher, 313-337-2187

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

United States of America
v.
DONALD RAYMOND CROFT

Case: 2:12-mj-30345
Judge: Unassigned,
Filed: 05-29-2012 At 10:47 AM
IN RE SEALED MATTER (SRJ)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __January of 2007 through August of 2009__ in the county of _____Wayne_____ in the ___Eastern___ District of _____Michigan_____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 2251 | Production of Child Pornography |
| Title 18, United States Code, Section 2252A(a)(2) | Distribution of Child Pronography |
| Title 18, United States Code, Section 2252A(a)(5)(B) | Possession of Child Pornography |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

Wylie R. Christopher, USPIS
Printed name and title

Sworn to before me and signed in my presence.

Date: __May 29, 2012__

City and state: __Detroit, Michigan__

_____
Judge's signature

Mark A. Randon, United States Magistrate Judge
Printed name and title

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Wylie R. Christopher, for the United States Postal Inspection Service (USPIS), being duly sworn, do depose and state the following:

### I. INTRODUCTION

1. Your Affiant, Postal Inspector Wylie R. Christopher, hereafter referred to as Affiant, is assigned to the USPIS, Detroit Division. Affiant has been employed as a Postal Inspector since January of 2006. Prior to receiving this position, Affiant completed a twelve week training academy where investigative techniques were taught and developed. In addition to the above mentioned training, Affiant completed more than 200 hours of training related to child exploitation investigations and computer forensics. Affiant is currently assigned to a Multifunctional Team and is responsible for investigations involving the sexual exploitation of children and the trafficking of child pornography through the United States mail.

2. The information contained within this Affidavit is based on my training and experience, as well as information related to me by other law enforcement officers.

3. I am submitting this affidavit in support of a Criminal Complaint for a warrant for the arrest of Donald Raymond Croft violating Title 18, United States Code, § 2252 and 2252A – the production, receipt and possession of child pornography.

### II. BACKGROUND OF THE INVESTIGATION

4. On or about September 22, 2010, a CyberTipline Report and complaint was made with the National Center for Missing and Exploited Children ("NCMEC"). The subject of the complaint was a website hereinafter referred to as "Website 1." The complaint stated that Donald Croft accepted PayPal payments for pictures of minors and for soiled clothing worn by minors. The address associated with Croft was reported as P.O. Box 5xxx94, Livonia, MI,

48153. The e-mail provided by the complaint was "rebscsm@gmail.com" with an IP address of 76.192.57.40. The Gmail address "rebscsm@gmail.com" has also been directly connected to the name "Rebel Shooter."

5. In January of 2011, Affiant received information from the USPIS that a child erotica or modeling website, Website 1, was based in Livonia, Michigan.

6. From January 2011 until April 2011, while operating in an undercover capacity, Affiant visited Website 1 until Affiant visited Website 1 and received the following message: "This site is Under Construction and Coming Soon." Affiant determined that Website 1 offered for sale hundreds of images of minor girls. Website 1 also offered to sell different collections of images depicting five particular minor female children.

7. One of the "special" children highlighted on Website 1 was "Alli." Website 1 advertised more than 25 galleries of "Alli." In most of these galleries, "Alli" wore makeup and was dressed and posed in a provocative manner. One gallery for sale was entitled "Neon Alli" and contained 61 pictures for $45. A sample of the "Neon Alli" gallery was displayed on Website 1 and consisted of three pictures of a girl under the age of 13 who appeared completely naked and covered with neon body paint. The profile listed her height, weight, year of birth (as 2002), bust, waist, hip, and shoe sizes. It also listed her favorite color.

8. On or around August 2, 2011, while working in an undercover capacity, Affiant, sent a letter via U.S. Mail to CIC at PO Box 5xxx94, Livonia, MI, 48153. In the letter, Affiant asked "[d]o you have a new site and can I still buy pictures?"

9. On or about August 9, 2011, a letter was received via the U.S. Mail from CIC to Affiant. The letter contained the original letter sent from Affiant to CIC with a handwritten

message containing a new website, hereinafter referred to as "Website 2," and a code written out as "con code#60204JC06."

10. On multiple occasions, between August 9, 2011 through February 2012, Affiant visited Website 2 in an undercover capacity. Website 2, like Website 1, sold gallery sets of images of female children. Some of the gallery sets focused on seven particular minor girls and contained multiple images of each of the girls.

11. On or about September 30, 2011, while operating in an undercover capacity, Affiant prepared an order form which requested the purchase of three galleries. Affiant also prepared a Western Union Money Order in the amount of $75 made payable to CIC. Affiant sent the form and the money order by way of the U.S. Mail to CIC, PO Box 5xxx94, Livonia, MI, 48153.

12. On or about October 3, 2011, Affiant received a letter with a return address of CIC, PO Box 5xxx94, Livonia, MI, 48153. The envelope contained a typed letter which indicated that an email address and a $50 service fee were required for pictures to be burned onto a compact disc. The letter also stated "we prefer online internet delivery via a file sharing site, but can do the other one once we receive the additional funds." The letter appeared to be from someone using the name "REB."

13. On or about October 6, 2011, Affiant requested NCMEC to provide images associated with Donald Croft's (a.k.a. Rebel Shooter) websites ("Neon Alli") and all reports and complaints filed against Donald Croft, Donald R. Croft, Donald Croft II, Donald R. Croft II, Rebel Shooter, Rebel Shooter, Reb, Rebel Gallery, Rebel-Galleries.com, and rebelscsm.net. "Neon Alli" is the title of a gallery of images the NCMEC obtained from other law enforcement officers who conducted child pornography investigations.

14. NCMEC provided approximately 10 complaints that had been filed from July of 2009 through June of 2011. The complaints related to Donald Croft and Rebel Shooter. NCMEC also provided Affiant with a compact disc containing 2,192 images of "Alli." NCMEC explained that the "Alli" images they provided were received from the Department of Justice and the Federal Bureau of Investigation as a result of two separate child pornography investigations. All 2,192 images were of "Alli" who appeared to be under the age of 13 years. Affiant spoke to one investigating officer who stated the Alli images were recovered from a child pornography investigation of an individual who was later determined to be a molester of children. In most of the images "Alli-model.com," "Miss Alli," or "Neon Alli" were printed as an overlay on the images. The images titled "Miss Alli" and "Neon Alli" also had "Copyright CIC P:Rebel_Shooter" as an overlay on the images.

15. One of the "Neon Alli" images (TA55990_2_3162.jpg), depicted Alli standing completely naked and covered with body paint.

16. In another image (TA59596_1_GCoyu_UWMO479dg6qoNtRA--_m.jpg), "Alli" is approximately 6 years old, standing, mostly naked, and wearing a white cowgirl hat and white cowgirl boots. Her genitals and breasts are clearly visible. This particular image was recovered by a law enforcement agency that discovered the image during the execution of a search warrant in a child pornography investigation. The NCMEC has also associated this image with Donald Croft/Rebel Shooter as well as with cataloged images of other "Alli" images and with what has been identified as the "Alli" series.

17. On or about October 11, 2011, Affiant, in an undercover capacity, sent a $50 Western Union Money Order to CIC. Affiant also sent a letter which requested to purchase 3

galleries which were entitled "Neon Nahla," "Miss Nahla Gallery 83," and "Miss Alli 171." The money order and form were mailed to CIC, PO Box 5xxx94, Livonia, MI, 48153.

18. On or about October 27, 2011, Affiant received an envelope with a return address of PO Box 5xxx94, Livonia, MI, 48153. The envelope contained a Rite Aid Money Order for $125, the original letter sent to CIC on or about October 11, 2011, a typed letter and a "First Time Supporter" letter. The typed letter indicated that Affiant's request to become a Rebel-Galleries Supporter had been denied. The letter also explained that "we have phased out our CD policy and will not be offering them via mail anymore." The typed letter appeared to be from someone using the name "REB."

19. On November 15 and 18, 2011, while working in an undercover capacity, the USPIS videotaped and photographed Website 2.

20. On November 18, 2011, while working in an undercover capacity, the USPIS used website capture software to copy Website 2. The software captured a copy of the website enabling the website to be viewed off-line.

21. Between November 18 and December 7, 2011, while working in an undercover capacity, the USPIS sent emails, from an undercover email address to "rebscsm@gmail.com," the email address associated with both Website 1 and Website 2. The USPIS inquired about purchasing images from Website 2.

22. The USPIS received a response from rebscsm@gmail.com which, through the Gmail e-mail system, displayed the name associated with the e-mail account in the response instead of the actual e-mail address. The name that was displayed by Gmail was "Rebel Shooter." In the response, Rebel Shooter provided instructions on how to order the images. Rebel Shooter also explained that first time buyers were limited on what they could purchase.

According to Rebel Shooter, once a first time buyer made their initial purchase and was verified, they could make further purchases.

23.   Rebel Shooter indicated that once payment was received for the images, website information where the images can be downloaded and a code would be sent to the purchaser. The instructions indicated that the order must be made by way of email to rebscsm@gmail.com/ Rebel Shooter and a copy of the order request must also be mailed, along with a form of payment, to C.I.C., P.O. Box 5xxx94, Livonia, MI 48153.

24.   On December 7, 2011, the USPIS emailed an order to rebscsm@gmail.com/ Rebel Shooter for four sets of images of three different minor females. At approximately 4:20 PM CST, a response was received from rebscsm@gmail.com/ Rebel Shooter stating, "All looks in order. I will mail you your Verification code as soon as this arrives. Thank you for your support."

25.   On December 8, 2011, the USPIS mailed a $60.00 U.S. Postal Service money order, serial number 19288899292, to CIC for the purchase of the four sets of images of the three different minor females.

26.   On or about December 13, 2011, the USPIS received a letter via the U.S. Mail from a location in Michigan without a return address. Enclosed was a piece of paper which contained a verification code. Using an undercover email address, the USPIS e-mailed and informed rebscsm@gmail.com/Rebel Shooter that the verification code was received. At approximately 12:40 PM CST, an email was received from rebscsm@gmail.com/Rebel Shooter. A portion of the email stated, "We received your sponsorship and gallery request. The requested galleries have been prepared and uploaded....Thank you again for your support of our

work!!!...REB." The email also provided a link to a file sharing website, a username, and a password.

27. The USPIS followed the instructions provided by REB in the above mentioned email which allowed the USPIS to download the four file folders which contained approximately 232 pictures of 3 different girls. The girls appeared to be less than 13 years-old. In all of the pictures, the girls wore make-up and provocative attire. In one image, "Alli Gallery 185 (40).jpg," "Alli" was wearing a white shirt, white thong underwear, and white high-heel boots. She was lying on the floor with her legs open and it appears she blew a kiss to the camera. Her genitals were partially visible in this picture.

28. On January 17, 2012, the USPIS emailed an order to rebscsm@gmail.com/Rebel Shooter with a request to purchase "Miss Alli's Save the Tigers" set of 118 pictures. A response was received from rebscsm@gmail.com/Rebel Shooter which pertained to the order and how payment would be made for the pictures.

29. On January 18, 2012, an email was received from rebscsm@gmail.com/Rebel Shooter which stated he would contact the undercover USPIS email address once payment was received.

30. On January 23, 2012, at approximately 01:04 PM CST, an email was received from rebscsm@gmail.com/Rebel Shooter. The email stated, "We received your sponsorship and gallery request. The requested galleries have been prepared and uploaded....Thank you again for your support of our work!!!...REB." The email also provided a link to a file sharing website, a username, and a password. The USPIS followed the instructions provided by REB in the above mentioned email. The USPIS downloaded a file folder file folder which contained approximately 119 pictures of "Miss Alli."

31.     In all of the pictures, "Alli" is completely naked except for body paint. In one picture "Alli Save The Tigers.jpg," "Alli" is standing up and her back is to the camera as someone is painting her body with orange body paint. Her buttock is totally exposed to the camera. In another picture, "Alli Save The Tigers (55).jpg," "Alli" is sitting down with her legs open. She is holding a tiger-like tail and is completely naked except for body paint, the tail, and what appeared to be tiger-ears. A portion of "Alli's" genitals are exposed in the photograph.

32.     USPS records indicate on or about September 18, 2006, the PO Box 5xxx94 in Livonia was rented to CIC, Croft Investment Corp, Donald R. Croft II. USPS records further indicated the address associated with this PO Box was 3330 4th Street, Kalamazoo, MI 49009.

33.     Law enforcement databases revealed in or around 2006, Donald R. Croft moved from the above referenced Kalamazoo residence.

34.     On or about October 5, 2011 a Grand Jury subpoena was served to Google Incorporated who provides "gmail.com" email addresses, requesting information related to the user who was assigned the email address "rebscsm@gmail.com."

35.     The subscriber associated with the e-mail address "rebscsm@gmail.com" was identified as Rebel Shooter by Google Incorporated. Affiant knows, based on training and experience that the individual who created the Gmail account can use whatever name they chose when associating a name to a particular Gmail email address. Consequently, whoever created the rebscsm gmail account also used the name Rebel Shooter as the associated name to the account.

36.     Pursuant to the Grand Jury subpoena, Google provided 5 secondary email addresses associated with rebscsm@gmail.com. The name, email addresses, created on dates, and IP addresses associated with the secondary accounts were as follows:

    a. Rebel Shooter; rsgalleries@gmail.com; November 21, 2008; 76.192.57.40

    b. Rebel Shooter; rstalent@gmail.com; August 16, 2008; 76.192.57.40

    c. Rebel Shooter; rebelscsmtalent@gmail.com; May 6, 2009; 76.192.57.40

    d. Don Croft; croftinvestmentcorp@gmail.com; July 28, 2008; 76.192.57.40

    e. Rebel Photographer; rebscsmtalent@gmail.com; April 30, 2008; 75.38.131.161

37. Google also provided IP address activity associated with rebscsm@gmail.com. From September 14, 2011 until October 5, 2011, an individual logged into and out of the email address "rebscsm@gmail.com" approximately 261 times. Of the approximate 261 login and logout events, during approximately 256 of those occurrences, the e-mail address utilized the IP address, 76.192.57.40.

38. Law enforcement traced IP address 76.192.57.40, using publicly available searching tools, as an IP address operated by AT&T.

39. On or about October 17, 2011, a Grand Jury subpoena was served to AT&T Internet Services requesting information related to the user who was assigned to the IP address 76.192.57.40.

40. AT&T Internet services indicated that IP address 76.192.57.40 resolved to Gary Morrow. The address associated with Gary Marrow's account was 35587 Veri Street, Livonia, Michigan, 48152. AT&T advised that Marrow's account was an active account.

41. Law enforcement databases show that three individuals reside at 35587 Veri Street, Livonia, Michigan, 48152: Gary Morrow, Sandra Croft, and Donald Raymond Croft II.

2:12-mj-30345-JU Doc # 2 Filed 05/29/12 Pg 11 of 15 Pg ID 12

- 10 -

42. On December 12, 2011, another Grand Jury subpoena was served on Google Inc. requesting information related to the user who was assigned the email address "rebscsm@gmail.com."

43. On December 27, 2011, Google Inc. responded to the Grand Jury Subpoena from December 12, 2011. In their response, Google indicated that on December 7, 2011 at approximately 4:16 PM CST, an individual logged into the email address "rebscsm@gmail.com" then logged off at approximately 4:20 PM CST. On this same date at approximately the same time, the USPIS received an email from "rebscsm@gmail.com." The IP address associated with the above mentioned activity was 76.192.57.40.

44. Michigan license records for Donald Raymond Croft II indicated an address of 35587 Veri Street, Livonia, Michigan 48152, Social Security Number XXX-XX-XX57, and Date of Birth of XXX XX, 1967.

45. On February 21, 2012, a search warrant was executed at 35587 Veri Street, Livonia, Michigan, 48152, the residence of Donald Raymond Croft. During the execution of the search warrant, computers, computer storage devices, and computer storage media were seized. In addition, documents containing modeling contracts and hundreds of pieces of lingerie and other erotic clothing in small child-like sizes, were seized.

46. During the search warrant, Croft was interviewed regarding the possession, receipt, distribution, and/or production of child pornography and/or child erotica. Prior to any questioning, Croft was advised of his Constitutional rights and agreed to talk to law enforcement. He also read and signed Inspection Service Form 1067, Warning and Waiver of Rights, prior to questioning. During this interview Croft made the following statements:

a. Croft stated that he did produce child pornography. He stated he believed the photographs he captured were art. Croft was asked why girls, under 18 years, were featured on his website wearing provocative clothing. He stated he did not feel clothing could be provocative. Croft was informed PayPal filed a complaint against him for selling soiled clothing worn by underage girls. He stated the clothing was not soiled and he did try and sell the used clothing worn by all his models; under or over 18 years of age;

b. Croft was asked about an interview he conducted on the Internet regarding "Miss Alli." During that interview Croft stated Dale Russell and himself shared similar views regarding the 1st Amendment. Croft stated he did not recall making that statement but added it was possible he said something similar to Russell and himself sharing similar views about the 1st Amendment;

c. Croft was asked if "Miss Alli' was his most popular child model. He stated no. Croft stated she was no longer a model because her father discovered she was a child model and did not approve. Croft was asked what was the age range for his models. He stated he currently had models as young as 4 years and as old as 34 years of age. Croft was asked if the parents of models under 18 years of age were aware their children were models. He stated yes. Croft was asked if he ever photographed children under the age of 18 without the presence of a guardian. He stated no. Croft stated all of the models parents, under the age of 18, signed the modeling contracts;

d. Croft was asked where he conducted photo-shoots of his models. He stated he photographed his models in his residence; at the Greenmead Farm in Livonia, Michigan, Henderson's Castle, Embassy Suites, and at Belle Isle;

e. Croft was asked if he photographed nude models. He stated he initially would photograph some models over the age of 18 years of age topless, but it adversely affected his child modeling business therefore he did not actively photograph nude models. Croft stated he did not photograph any models under the age of 18 years nude. He was asked about photographs of "Miss Alli" nude except for body paint. Croft stated he did not consider those photographs nude and stated her mother applied all the paint on Alli;

f. Croft was asked if he ever inappropriately touched or molested a child less than 18 years of age. He stated no. Croft was asked if he ever had a sexual relationship with any of his models. He stated no. Croft was asked if he ever had a sexual relationship with any of the mothers of his models. He stated he did have a sexual relationship with one mother of a model;

g. Croft was asked if any child pornography would be on any of his computers or computer storage devices. He stated no. Croft stated he saw things before that were much worse than what he produced. He was asked to elaborate and further articulate what he meant by stating he saw things much worse. Croft stated he would plead the 5th regarding that question.

h. Croft was asked if he ever saw child pornography on the Internet. He also stated he would plead the 5th regarding that question;

    i. Croft was asked who had access to his computers and computer storage devices. Croft stated no one had access to his computers or computer storage devices. Croft was asked if his computers or computer storage devices contained any encryption or passwords. Croft stated his computers are not encrypted or password protected;

    j. During the interview a photograph was noticed on the shelf above the fireplace. Croft stated the person in the photograph was his daughter and he confirmed she was a model featured on his website and she was under 18 years of age. Croft stated his daughter's mother was not aware his daughter was a model featured on his website. Croft was asked about a book about sex trafficking which was found in the basement. He stated he purchased it from a bookstore because he thought it might be interesting.

47. On or about April 12, 2012, the Michigan Internet Crimes Against Children Taskforce completed forensic analyses of the computers and computer storage media removed from Croft's residence which revealed numerous images of child pornography and child erotica that depicted prepubescent and/or pubescent girls. In one image !MG_92777.JPG, created on or about August 20, 2009, a pubescent girl, referred to as Nahla on Websites 1 and 2, was lying on a bed with a leg extended into the air. She was wearing white, see-through, fish-net lingerie. She is not wearing any undergarments and her naked genitals are completely exposed and visible to the camera. In another image, a prepubescent girl was sitting on a man's face. The girl was completely naked and it appeared her completely naked genitals were on the man's face.

48. On May 10, 2012, a copy of the image described in paragraph 16, (TA59596_1_GCoyu_UWMO479dg6qoNtRA--_m.jpg) was shown to the mother of the model

known as "Alli." Alli's mother stated the girl in the image was her daughter but she did not know when the picture was taken. Alli's mother stated Donald Croft took the picture and was the only photographer her daughter modeled for. Alli's mother stated she did recall her daughter taking pictures at the location in the photograph as well as taking pictures wearing the hat and boots in the photograph. However, Alli's mother stated she did not allow her daughter to be photographed nude and did not know that photograph was taken. Alli's mother stated her daughter's age in the photograph was approximately 5 or 6 years. Therefore it is estimated the photograph was taken in or around 2007 or 2008. Alli's modeling contract was seized during the execution of the search warrant of Croft's residence on February 21, 2012. It was signed and dated by Alli's mother on or about June 5, 2007.

49. Based upon the images discovered during the forensic examination and the testimony of Alli's mother, Affiant believes probable cause exists that Donald Raymond Croft collected and produced child pornography.

50. Based on the above described information, I believe there is probable cause to conclude Donald Raymond Croft violated Title 18, United States Code, Sections 2251, 2252A(a)(2), 2252A(a)(5)(B), the production, distribution, and possession of child pornography.

Wylie R. Christopher
Postal Inspector
US Postal Inspection Service

SUBSCRIBED TO AND SWORN BEFORE ME
this day of May 21, 2012

MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE